## Paul Kerz, Appellee, v. Galena Water Company, Appellant.

### Gen. No. 4,909.

1. Appeals and errors—*when must be taken from order refusing to dissolve injunction.* An appeal from an order refusing to dissolve an injunction must be taken within thirty days and perfected within sixty days from the entry of the order.

2. Injunction—*when may be granted without bond.* It is within the discretion of the court to grant an injunction without bond in a case where the public interest is involved.

3. Injunction—*when granting of, without bond, cannot be complained of.* After a hearing on the merits in which an injunction is made permanent, a party cannot be heard to complain that the temporary injunction was issued without notice and without bond.

4. Franchise—*how ordinance granting, construed.* In construing a franchise ordinance, the courts will give effect to the interpretation placed thereon by the party to whom the franchise was granted where such interpretation is contrary to the contention of such party in the particular case under consideration.

5. Corporations—*duty of quasi-public.* Public service corporations must not discriminate; they should accord to every individual entitled to its service equal rights and privileges.

Bill in chancery. Appeal from the Circuit Court of Jo Daviess County; the Hon. Oscar E. Heard, Judge, presiding. Heard in this court at the October term, 1907. Affirmed in part, reversed in part and remanded, with directions. Opinion filed March 11, 1908.

**Statement by the Court.** This is a bill in chancery brought by Paul Kerz against the Galena Water Company on April 29, 1902, to restrain the defendant from shutting off the water supply to complainant's residence in the city of Galena. The bill alleges that complainant is a resident taxpayer and property owner in the city of Galena and interested in the proper enforcement of any contract or franchise for the supply of water for public or private use; that on August 3, 1886, said city passed an ordinance authorizing the construction and operation of waterworks by Henry S. Raymond or assigns for a supply of water for public and private use; that section 10 of said ordinance is as follows:

Kerz v. Galena Water Co.

"Sec. 10.  The said Henry S. Raymond, or assigns shall not charge to customers during the existence of the franchise granted by this ordinance exceeding the following MAXIMUM ANNUAL RATES.  But he shall have the right at his will, at any time to insert a water meter into the service pipe of any customer, and to supply him at meter rates. The connection between the mains and the consumer shall be made at the expense of the consumer, and the lowest annual rates in any case shall be $5.00.

### ANNUAL RATES.

| | |
|---|---|
| Banks, one self-closing faucet | $8.00 |
| Banks, one self-closing faucet with hose connections and one wash basin | 10.00 |
| Bakeries, daily average of each barrel of flour used, per bl. per annum | 3.50 |
| Barber shops, one chair and basin | 1.50" |

(Here follow fifty-seven other items ranging in price from two cents to forty dollars.)

### "METER RATES.

100 to 1000 gallons per day, at rate of 1000 gallons $0.50
1000 to 2000 gallons per day, at rate of 1000 gallons. . 0.40"

(Here follow five other items reducing prices according to quantity from 35 to 15 cents.)  The bill further alleges that in pursuance of said franchise a waterworks system was constructed, operated and maintained, and water was supplied to the city and its inhabitants until this day by defendant; that one William R. Holder is at present and for some years past has been manager for the defendant and makes all contracts with consumers and collects charges; that in April, 1901, complainant fitted his residence with water fixtures and a water meter at his own expense and had the same connected with the service pipe of defendant in such a way that every gallon of water used by complainant was registered; that appellee began to use water May 8, 1901, and on September 27th Holder presented a bill for $2.75 for 5,520 gallons of water used by complainant, being at the

rate of fifty cents per 1,000 gallons, which bill was there paid; that on January 1, 1902, defendant presented a bill for $3 for 2,770 gallons of water used; that complainant tendered $1.38 to defendant, being pay at the rate of fifty cents per 1,000 gallons consumed, which payment defendant refused to accept; that defendant claimed and insisted that the minimum annual rate through a meter is $12 per year or $3 for three months; that on April 9, 1902, defendant again presented a bill for $3 for three months although complainant had only used 3,712 gallons for which defendant was entitled to $1.86 when the water was charged for at the ordinance rate of fifty cents per 1,000 gallons; that complainant has continued to use water and tender pay at the rate of fifty cents per 1,000 gallons, and defendant insists upon payment at the rate of $3 every three months as the minimum rate regardless of the small quantity of water used; that complainant has tendered to defendant the sum due for water as registered by the meter at the rate of fifty cents per 1,000 gallons, with the sum of forty-two cents, the minimum monthly ordinance rate, in advance, but the defendant refuses to accept the same and has notified complainant that after April 30, 1902, it will refuse to furnish any water to him unless he shall pay at the rate of $12 per annum; that defendant in attempting to collect $12 as the minimum annual rate is violating section 10 of said ordinance and is arbitrarily and unjustly refusing to furnish water at the rate provided by the said ordinance, and is discriminating between complainant and other consumers who are using water through a meter under like conditions with complainant. The bill prays for an injunction restraining defendant and its agents from shutting off the water supply from complainant's premises, and that said injunction be issued without notice, for the reason that if notice is given to defendant it would cut off the supply of water at once. There being no circuit judge in the county a temporary injunction was issued by the master in chancery, the order being that the injunction be issued without bond. Thereafter a supplemental bill was filed setting up an ordinance

passed by said city May 1, 1902. At the February term, 1906, a second supplemental bill was filed setting forth that the defendant had filed a bill in chancery in the Federal Court and obtained a temporary injunction restraining the enforcement of the ordinance of May 1, 1902. At the May term, 1902, a motion was made by the defendant to dissolve the temporary injunction and dismiss the bill. On February 28, 1906, the motion to dissolve the temporary injunction was overruled. No appeal was taken from the order overruling the motion to dissolve the injunction. The defendant answered the bill, and the cause was referred to the master to take the evidence. The final decree entered June 22, 1907, recites that the cause was heard on the bill, answer, replication and report of the master, and makes the temporary injunction permanent and approves a bond of the complainant that day filed. The defendant appeals from the final decree.

SHEEAN & SHEEAN, for appellant.

JONES & KERZ, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

It is first insisted that there was error in refusing to dissolve the temporary injunction and dismiss the bill for the reason the injunction was issued without notice and without bond. No appeal was taken from the order overruling the motion to dissolve the injunction. An appeal from an order refusing to dissolve an injunction must be taken within thirty days and perfected within sixty days from the entry of the order. Hurd's Statutes, 1905, page 234, section 52. The bill was sworn to and set forth a good cause for issuing the temporary injunction without notice. If notice of the application had been served the appellant might have shut off appellee's water supply and accelerated the mischief the injunction was intended to prevent. The first sentence in appellant's argument is "The importance of the question involved in this case is not measured by the amount of money

in controversy between appellant and appellee, but in the right to charge all consumers of water through a meter a sum not less than $12 per annum."

It is within the discretion of the court to grant an injunction without bond in a case where the public interest is involved, as it is in this case, but there should have been some showing in that regard before the injunction was granted. Kohlsaat v. Crate, 144 Ill., 14. The appellant cannot be heard to complain that the temporary injunction was issued without notice and without bond, after a hearing on the merits in which the injunction is made permanent. Brown v. Leuhrs, 79 Ill., 576; O'Kane v. West End Dry Goods Co., 72 Ill. App., 297.

The meritorious question involved is what rate did the appellant have the right to charge water consumers for water supplied through a meter. The contention of appellee is that the highest rate appellant might charge is at the rate of fifty cents per 1,000 gallons of water used, the annual charge however to be not less than $5 per annum to any consumer, while on the other hand the appellant insists it had a right to require every customer to have a meter and that every customer having a meter must pay for not less than 100 gallons per day at the rate of fifty cents per 1,000 gallons if the customer did not use to exceed 1,000 gallons per day. The ordinance under which appellant is supplying the citizens of Galena with water provides, that the said Henry S. Raymond shall not charge to customers during the existence of the franchise exceeding certain fixed maximum annual rates, but he shall have the right at his will at any time to insert a water meter into the service pipe of any customer and to supply him at meter rates, and the lowest annual rate in any case shall be $5. There is a tabulated scale of rates for about sixty different occupations varying from $60 for a fountain with an " orifice five-sixteenths of an inch" down to "making mortar and wetting brick per 1,000" two cents. This table of annual rates is followed by "Meter Rates 100 to 1,000 gallons per day at

rate of 1,000 gallons, $0.50," with other rates, the price de-creasing with the amount used.

The maximum price allowed to be charged for meter rates is fifty cents per 1,000 gallons. No price is fixed for meter rates where less than 100 gallons per day is used. The or-dinance concerning rates contains the provision: "But he (appellant) shall have the right at any time to insert a meter into the service pipe of any customer and to supply him at meter rates."

Appellant insists that it has the right to charge every per-son in whose service pipe there is a meter with the use of 100 gallons per day whether that much or only a single gallon is used. If that is the correct construction to be placed on the ordinance, then appellant having the right to order the insertion of a meter in the service pipe of any customer, which insertion, under the rules of appellant, is made at the expense of the customer, has the right to charge every customer with 36,500 gallons per annum at the rate of fifty cents per 100 gallons, or an annual charge of $18.25 per annum, no matter how little water the customer may use. Such a construction is not a reasonable one, when the entire rate section is considered together. "It is the duty of a court in construing a contract to discover and give effect to the intention of the parties where it is practicable to do so, so that the performance of the contract may be enforced according to the sense in which it was mutually understood at the time it was made, and greater regard should be paid to the clear intent when ascertained than to any particular words which may have been used in the expression of that intent." Field v. Leiter, 118 Ill., 26; Massie v. Belford, 68 Ill., 290; Richmond v. Brandt, 118 Ill. App., 624; Elzas v. Elzas, 72 Ill. App., 94; Whalen v. Stephens, 92 Ill. App., 235. "Where the terms of a contract are uncer-tain and the parties by their conduct have placed a reason-able construction thereon, such construction will be adopted by the court, and in seeking the intention of the parties to the written contract regard will be had to any practical construc-tion which the parties by their acts have put upon it."

Whalen v. Stephens, 193 Ill., 121; Mueller v. Northwestern University, 195 Ill., 236; Carroll v. Drury, 170 Ill., 571; Jamieson v. Wallace, 167 Ill., 388; Windmiller v. People, 78 Ill. App., 273.

"Courts, in construing or interpreting a statute, give much weight to the interpretation put upon it at the time of its enactment and since by those whose duty it has been to construe, execute and apply it." Bruce v. Schuyler, 4 Gilm., 221; Bunn v. People ex rel., 45 Ill., 396; People ex rel. v. Loewenthal, 93 Ill., 191; Nye v. Foreman, 215 Ill., 285; Cook County v. Healy, 222 Ill., 310; Brennan v. U. S., 136 Fed. R., 743; Cooley's Const. Lim., 82 (citing Stuart v. Laird, 1 Cranch, 299); 26 Am. & Eng. Ency. of Law (2d ed.), 633.

It appears from the record that the appellant is a corporation and is supplying the citizens of Galena with water under the ordinance giving that right to Raymond and assigns. It is a public service corporation using the streets of the city of Galena in the performance of a business public in its nature and upon which a public interest is impressed. "It is well settled that parties who carry on a business which is public in its nature must serve all who apply on equal terms and at reasonable rates." City of Danville v. Danville Water Co., 178 Ill., 299; Wagner v. City of Rock Island, 146 Ill., 139; Munn v. People, 69 Ill., 80; Munn v. Illinois, 94 U. S., 113; 29 Am. & Eng. Encyc. of Law (2d ed.), 12. A corporation existing by the grant of public franchises and supplying the great conveniences and necessities of modern city life, as water, gas, electric light, street cars and the like, is doing a business affected with a public interest, and while it is not bound to treat all its patrons with absolute equity it must treat all fairly and without unjust discrimination. "The law will not and cannot tolerate discrimination in the charges of these *quasi*-public corporations. There must be equality of rights to all and special privileges to none." Inter-Ocean Co. v. Associated Press, 184 Ill., 438; Stock Exchange v. Board of Trade, 127 Ill., 153; People v. Suburban R. R. Co., 178 Ill., 594; Snell v. Clinton Elec-

tric Light Co., 196 Ill., 626; Cincinnati, Hamilton & Dayton R. R. Co. v. Village of Bowling Green, 49 N. E. R., 121; Griffin v. Goldsboro Water Co., 122 N. C., 206; Owensboro Gaslight Co. v. Hildebrand, 42 S. W. R., 351.

Substantially ever since the grant of this right to Raymond, when a meter was installed in a customer's service pipe, the appellant has only charged for the water actually used at the rate of fifty cents per 1,000 gallons, even where the customer used less than 100 gallons per day. This is a construction of the meaning of the ordinance which must be held binding on the appellant. The appellee alleges that he offered to pay for all the water he used at the meter rate and to pay such sum at least as would make up the minimum sum of $5 per year. This is the reasonable construction of the ordinance, and is a more favorable construction for appellant than appellant had placed upon it with other customers. The Circuit Court correctly held that appellant was bound by its own construction of the ordinance; that a consumer of water through a meter could not be made to pay for 100 gallons per day if he did not use that quantity, but could only be compelled to pay the minimum charge of $5 per annum, unless he used more than that amount when charged at the rate of fifty cents per 1,000 gallons.

The decree however is too broad. It restrains the appellant from turning off the water from appellee's residence or doing or performing any other acts which would unduly prejudice the rights of appellee. The court below is directed to so modify the decree as to enjoin appellant from turning off the water from appellee's residence so long as he pays at the rate of fifty cents per 1,000 gallons for the water he uses, paying not less than $5 per year, payments to be made at such times as the ordinance or general rules of the company may prescribe, and so long as he shall comply with all other reasonable rules and regulations of the appellant, and so long as said ordinance remains in force.

*Affirmed in part, reversed in part and remanded with directions.*